## LINTON et al *v.* STANTON.

The act of Congress of 19 August, 1841, establishing an uniform system of bankruptcy, does not require that an appellant should file, after the decree declaring him a bankrupt, a separate petition for a discharge, under the penalty of nullity of the subsequent action of the court, as against creditors. A prayer for a discharge, in the original petition of the bankrupt, is sufficient. Sec. 4.

A plea that defendant had been discharged from his debts, under the stat. of 1841, as a bankrupt, will not be affected by the fact that no order appears in the transcript from the bank-

LINTON
v.
STANTON

rupt court, designating the time and place at which the creditors were required to appear, nor the newspapers in which the publication of notice was to be made. *Per Curiam:* The act requires that the newspapers shall be designated by the court, but not that the designation shall be made by a formal order of record in the case. It might have been made by a general order applicable to all bankrupt notices.

Where the judgment of a court, sitting in bankruptcy, declares that the notices required by the stat. of 1841 were published in proper form, such publication must be assumed to be true, by another court called upon to question collaterally the validity of the decree.

Sec. 4 of the stat. of 19 August, 1841, which gives the right of personal notice to a creditor whose residence is known, does not require a formal judicial process, and a return of service by the marshal; the service might have been by letter. The mode of service was a matter to be prescribed by the court, in its discretion.

Though a transcript of the proceedings under the bankrupt act of 1841, offered in evidence by one who sets up her discharge under the statute in defence to an action, does not show personal service on a creditor entitled to it under the act, the decree discharging him will not be declared null on that account.

A promise to pay a debt, from which the party had been discharged as a bankrupt, must be express, distinct, and unequivocal. The intention of the bankrupt to bind himself, must be clear.

A plea that certain notes sued upon, having been executed before the bankruptcy of the party, were secured by a deed of trust of real estate, and that plaintiff had received payment by purchasing the property and paying for it with the notes, is not inconsistent with a plea by defendant of his discharge as a bankrupt.

On an application for a new trial, on the ground of newly discovered evidence, it must clearly appear, not only that the discovery has been made since the trial, but that the party "had used every effort and diligence in his power" to procure the necessary testimony previously. C. P. 561.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Stockton* and *Steele*, for the appellants. *Benjamin* and *Micou*, for the defendant. The judgment of the court was pronouced by

SLIDELL, J. This suit is brought upon two promissory notes of the defendant's, due in 1841 and 1842. The prominent ground of defence is, a discharge in bankruptcy under the act of Congress.

In support of this plea, the defendant offered in evidence a transcript certified by the clerk of the district court of the United States for the southern district of Mississippi. The certificate declares that the transcript is a full, true and complete one, "of the petition in bankruptcy of *Frederic Stanton*, of Adams county, filed by him in this court at the date above stated, with all schedules and inventories, and all amendments to schedules and inventories, thereunto annexed, and of all proceedings thereupon had in this court, as the same remain on file and of record in my office." To this certificate is appended the usual certificate of the United States district judge.

By the transcript it appears that, on the 21st July, 1842, *Stanton*, a resident of that district, filed, in the said United States district court, his petition in bankruptcy. It is in the usual form, and concludes with a prayer that he may, by decree of the court, be declared a bankrupt according to the provisions of the act of Congress in such case made and provided, and that such further order and proceedings may be taken as are provided for, required, or directed, in and by the said act of Congress. To this petition were appended the usual oath and schedules. Then follows a decree in the cause, rendered and signed by the judge, on the 8th November, 1842, of the following tenor:

"Present: The honorable *Samuel Gholson*, district judge. In the matter of the petition of *Frederic Stanton*, to be declared a bankrupt, and to be discharged from his debts. No. 396.

Upon reading the petition, with the schedules and inventories thereto annexed, of *Frederic Stanton*, of the county of Adams, in this district, filed the 21st day of July, 1842, and upon reading and filing due proof of the publication of notice of the presentation of said petition, pursuant to the act of Congress, entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved August 19th, 1841, and upon motion of *Messrs. Quitman* and *McMurran*, solicitors for the petitioner, it is ordered that the said *Frederic Stanton* be, and he is hereby, declared, adjudged, and decreed a bankrupt, according to the provisions of the said act of Congress."

Next follows a decree rendered and signed on the 21st day of February, 1843, of the following tenor:

"Present: The honorable *Samuel J. Gholson*, district judge.

In the matter of the petition of *Frederic Stanton*, of Adams county, a bankrupt, to be discharged from his debts.    No. 396.

Whereas, on the 21st day of July, 1842, the above named *Frederic Stanton*, individually, and as a member of the firms of *Buckner, Stanton & Co., Stanton, Buckner & Co.*, and *M. B. Hamer & Co.*, filed his petition in this court, praying that the said *Frederic Stanton* might be declared a bankrupt and be discharged from his debts ; and was, on the 8th day of November, 1842, by decree of this court, duly declared a bankrupt.

Now at this day, to wit, on the 21st day of February, 1843, upon reading the said petition, with the schedule and inventory thereunto annexed, together with the said decree above mentioned, and due proof of publication of notices of the final hearing of said petition, it appearing that the said *Frederic Stanton* has fully complied with the provisions of the act of Congress, entitled "An Act to establish a uniform system of bankruptcy throughout the United States," approved August 19th, 1841, and is entitled to be discharged from his debts.    It is therefore ordered, adjudged, and decreed, that the said *Frederic Stanton* be, and he is hereby, by virtue of the act aforesaid, fully and entirely discharged from all his debts.

In testimony whereof, I, *Samuel J. Gholson*, judge of the district court [L. s.] of the United States for said district, have signed these presents, and caused the seal of the court to be hereunto affixed.

(Signed)                    S. J. GHOLSON, district judge.

Before considering the objections raised by the plaintiffs to the validity and binding force of these proceedings, it is proper briefly to notice the prominent provisions of the act of Congress pertinent to this controversy, premising that the plaintiffs' counsel does not question the constitutionality of that law, nor the jurisdiction of the district courts of the United States to entertain the application of *Stanton*.    The statute contemplates that the jurisdiction should "be exercised summarily," and without the rigorous observance of the formalities incident to proceedings at common law.    It also enacts that the proceedings in all cases of bankruptcy shall be deemed matters of record ; but the same shall not be required to be recorded at large, but shall be carefully filed, kept, and numbered, in the office of the court, and a docket only, or short memorandum, thereof, with the numbers, kept in a book by the clerk of the court.    It also vests in the district judges a very large discretionary power, authorizing the district court in each district, from time to time, to prescribe suitable rules and regulations, and forms of proceedings, in all matters of bankruptcy ; directing them, in all such rules, regulations and forms, to make them as simple and brief as practicable, to the end to avoid all unnecessary expenses, and facilitate the use thereof by the public at

LINTON
*v.*
STANTON.

large.  It directs that the discharge and certificate, when duly granted, shall, in all courts of justice, be deemed a full and complete discharge of all debts etc., of such bankrupt, and the same  shall be  conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud, or wilful concealment of the property, on the part of the bankrupt.  It directs that a copy of any decree in bankruptcy, and the  appointment of assignees, shall be recited in every deed of lands  belonging to the bankrupt conveyed by the assignees under this act, and that such recital, together with a certified copy  of such order, shall be full and complete  evidence both  of the bankruptcy and assignment therein recited.  It directs  petitions for the benefit of the act to be published in one or more newspapers  of the district,  to be designated by the court, and contains a similar  direction for  the publication which is to precede the discharge, calling upon all persons in interest to show cause against its being granted.  It provides that in all cases where the residence of the creditor  is known, a service on him personally, or by letter  addressed to him at his known usual place of residence, shall be prescribed by the court, *as in  their  discretion  shall seem proper*, having regard to the distance at which the creditor resides from such court.

This brief review of the statute will serve to  indicate the policy and spirit of the law with  regard to the  mode of proceeding, and the power of the  district courts of the United States in matters of bankruptcy.  It is not our province to question the wisdom of this  legislation, by which so  large a grant of power is made, and so wide a departure from the ordinary rules of *proceedings is* directed, or sanctioned.

With these preliminary  observations, we proceed to consider the objections made at bar to the  validity and  binding  force of the proceedings under which the plaintiffs demand the rejection of the defence.

It is said that, by the terms of the 4th section, the bankrupt was  bound to present a petition to the court, praying for his discharge and certificate, and that no such petition was ever filed by *Stanton*.  An examination of the 4th section of the statute has not satisfied us  that it  is indispensable that the petition for a discharge should  be filed after  the decree, under the  penalty of nullity of the subsequent  action of the court, as against creditors.  Such a conclusion is not necessarily deducible from the language of the law.  It is inferrible from  the record, which we  have quoted in detail, that the district judge construed the broad language of the original  petition as containing a prayer, not only to be decreed a bankrupt, but to  be allowed the full benefit which the  statute contemplates, and which was its main object; and it is not for us to say that the district judge of the United States erred  in so holding, and pronounce an absolute nullity,  which is not declared in the terms, and is inconsistent with  the spirit, of the statute.

The next objection is that, no order appears of record, designating the time and place  at which the  creditors should be required to appear, and the newspaper in which the publication should be made.

The act of Congress states that the newspaper shall be *designated* by the court, but it does not in terms require that the designation shall be made  by a formal  order of record in the  cause;  and the strictness which is invoked by counsel seems to us inconsistent with the provisions of the 13th section, already noticed.

There is nothing inconsistent with the terms and spirit of the statute, in supposing that the district court, under its power to make rules and regulations, may have designated, by a general order, one or more newspapers in which bankrupt

publications should be made. Such general order would not of course form part of the record in this cause, and would not be inserted by the clerk in his transcript.

That notices were published, and in proper form, must be assumed as true, unless the solemn judgment of a court of competent jurisdiction, which declares that they had been, be pronounced false by another court, called upon to question collaterally the validity of the decree.

But it is said that the *proviso* of the 4th section gives the right of personal notice to the creditor whose residence is known, as was the case in this instance. It is clear that, under the proviso, a formal judicial process and a return of service by the marshal, were not necessary. The service might be by letter, and the mode of service was a matter to be prescribed by the court, as in its discretion should seem proper. It would be inconsistent with the general spirit of the statute, the peculiar nature of the proceedings as contemplated by it, the large discretionary power vested in the district judges, and especially the strong language of the act respecting the effect of the certificate, to pronounce the nullity of the decree in question, upon the ground that the transcript of the record does not show a personal service made on *Duncan*.

The opinions we have thus expressed are corroborated by numerous authorities. The importance of the subject makes it proper to refer briefly to some of these decisions.

In *White* v. *How*, 3 McLean's United States Circuit Court Rep., 294, the question was whether a plea of bankruptcy was defective, because it did not set out the proceedings under which the bankruptcy was decreed. Mr. Justice McLean, after quoting the 4th section of the bankrupt law, observes : The plea is substantially good. It is not necessary to set out in such plea more than the certificate and discharge duly authenticated. The above provision makes these evidence, and conclusive evidence, unless the proceedings shall be shown to have been fraudulent.

In *Burnsids* v. *Brigham*, 8 Metcalf, p. 77, the question was as to the effect of the omission of the name of a creditor from the list. It was held that the mere omission of the name of a creditor, is not made by the statute a substantive ground for preventing or avoiding the discharge of a bankrupt. The plaintiff must show that the omission was wilful and fraudulent, and that, contrary to his oath, the bankrupt did know or believe that the plaintiff was a creditor, and wilfully or designedly omitted his name, because he apprehended opposition from the plaintiff, or from some other motive. To the same effect was the opinion of the Chancellor of New York, in *Hubbell* v. *Croup*, reported in Western Law Journal, vol. 2, p. 240; and of the Court of Common Pleas in New York, Ib. vol. 1, p. 479.

In S*trader* v. *Lloyd*, the Supreme Court of Ohio held that, where the defendant pleads a discharge in bankruptcy, such plea is proved by the certificate alone, without an exemplification of the record. 1 Western Law Journal, p. 396.

In *Shelton* v. *Pease*, 10 Missouri Reports, it was held that failure to give notice to a creditor will not vitiate a certificate of discharge in bankruptcy. Cited in 5 Western Law Journal, p. 473.

In *Fox* v. *Paine*, 10 Alabama Reports, the court said : " We think the omission to include the debt in the schedule, and the neglect to notify the creditor of the application, is not fraudulent in itself; nor, in the absence of circumstances evincing the intention to deceive, is it evidence from which fraud may be inferred.

LINTON
*v.*
STANTON.

It is also proper to observe that, in point of fact, one of the plaintiffs was well aware, before the discharge, that the defendant had instituted proceedings under the bankrupt act ; and, in answer to the defendant's letter announcing the fact, the motives for so doing and the hopes of future advantage, the plaintiff replied with an expression of approval of the defendant's course, in terms indicating a willingness that he should obtain his discharge. "I have no idea that your recent course will have any injurious effect on your business ; on the contrary, I think its effects are more likely to be beneficial."

As the certificate has not been impeached for fraud, and as the debt in question is not of that fiduciary class which is saved from the operation of the act we may here dismiss the question of the validity of the proceedings and decree of the bankrupt court.

The plaintiffs rely upon a new promise to pay the debt, for which the suit is brought, which they say is contained in a letter of the defendant, addressed to *Duncan,* one of the plaintiffs, after the bankrupt proceedings were commenced, and before the decree of bankruptcy. It has been often held that a new promise to pay a debt discharged by certificate, must be express, distinct, and unequivocal. The intention of the bankrupt to bind himself must be clear. We have carefully weighed the terms of the defendant's letter; and, even if it could be considered as containing a promise to pay that portion of his debts upon which *Duncan* was committed as his endorser, we are of opinion that it cannot be considered as covering the debts now in controversy. The subsequent letters cannot aid the plaintiffs, as they, on the contrary, exhibit a continued refusal on the part of the defendant to acknowledge himself bound, and give new obligations. See *Bach* v. *Cohn,* 3 An. 103, and cases there cited.

After pleading the discharge in bankruptcy, the defendant further pleaded, in a supplemental answer, that the notes sued upon, being executed before the bankruptcy, were secured by a deed of trust of certain real estate, and that the plaintiffs had received payment by purchasing the trust property and paying for it with the notes. This plea was not inconsistent with the plea of discharge, and therefore was not a waiver. Both allegations might be true, and the truth of either would bar the action. If the defendant was a *duly discharged* bankrupt, the personal liability was gone. If a sale of the trust property had been provoked by the *cestui que trust,* and its proceeds had been paid him, the claim itself was extinct.

After the rendition of the judgment, which was for the defendant, the plaintiffs moved for a new trial, upon the ground, among others, that the plaintiffs have discovered since the trial that the defendant, a short time previous to the filing of his petition to be declared a bankrupt, and in contemplation of bankruptcy, had given a fraudulent preference to one of his creditors. This application was supported by the affidavit of the attorney, his clients being non-residents and absent from the State. A portion of the plaintiffs are minors. The new trial was refused.

Applications for a new trial upon the ground of newly discovered evidence, are always received with great caution. It must not only clearly appear that the discovery has been made since the trial, but also, in the stringent language of the Code of Practice, that he had previously used every effort and diligence in his power. "Elle devra faire serment qu'elle ne les a découvertes que depuis le juguement, quoiqu'elle eût fait toutes les diligences nécessaires pour se procurer

des preuves pour sa défense." In the present case the showing is loose and defective on the score of diligence. C. P. 561, 560.