10 253
48 22

JOHN GLENN v, G. T. DUNBAR'S ADMINISTRATRIX.

An action for moneys advanced is a personal action,which is only barred by the prescription of twenty years when the plaintiff has been continuously an absentee residing in another State, since the inception of the debt.

A letter containing this language: "I beg that you will bear with me a little longer, and if my health is spared you will yet receive from me everything. I shall have to make you monthly payments, and by th:s means secure you the amounts," imports a conditional promise to pay. Such a letter, written by defendant, will not entitle plaintiff to judgment, as upon a new promise to pay after insolvency, when it is proved that defendant continued in bad health from the date of the letter till his death; and when it is neither al'eged nor proved that his affairs so prospered after that date as to give him the ability to pay.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.
L. *Hunton* and *E. A. Bradford*, for plaintiff.

*W. H. Hunt*, for defendant and appellant, argued:

The evidence offered to sustain plaintiff's demand consists, 1st. Of the extract from the schedule in the case of *G. T. Dunbar* v. *His Creditors*, filed 27th of March, 1840, which is as follows, to wit: To *John Glenn*, of Baltimore, for balance of his acceptance of my draft for $2750, receipted and paid by him for my accommodation (about) $2000 ; and, 2d. Of the letter of *G. T. Dunbar*, dated December 17, 1849, annexed to the petition, which is in these words :

"You will remember that when the first note I received from the sale of the machinery became due, I made a remittance to you. When the second series were near their maturity, I was out of town, but left the notes with my wife to hand to Mr. *Ramey*, with instructions to purchase a draft for the amounts remaining due to you and to Mr. *Stanley*, and remit them immediately. On my return I found that the notes had been paid, and that Mr. *Ramey*, to oblige a friend, had lent him the money for three days. He failed the day after, and I lost every dollar. I beg that you will bear with me a little longer, and if my health is spared you will yet receive from me everything. I shall have to make to you monthly payments, and by this means secure you the amount."

Prescription commenced to run in this case on the 27th March, 1840, the day when *Dunbar's* schedule was filed. Suc. of Debreuil, 12 Rob. 513—Trop. Pres. No. 719.

The defendant was cited on the 13th of June, 1851. More than eleven years had elapsed in the interval between these dates, and the plaintiff's right of action had become barred. C. C. 3508.

But the plaintiff alleges that prescription was interrupted by the letter of *Dunbar*, above, dated Dec. 17, 1849.

It is submitted that this letter does not contain such an acknowledgment of the plaintiff's right as the law requires to interrupt prescription. C. C. 3486. Marcadé de la Pres. Art. 2248, ¶ 10, p. 145. It is evident that the debt spoken of in the letter is not the same as that placed upon the schedule, and that there is no necessary or even apparent connection between them.

There is no specific mention in the letter, of date, circumstance, or amount, from which it can be inferred that the obligation of mention is in any way whatever connected with that mentioned in the schedule.

In speaking of the interruption of prescription, in his commentary on Art. 2243 of the Napoleon Code, which is in the precise terms of Art. 3486 of our Code, Troplong says: "Elle peut également resulter d'une lettre missive. Mais il faut que la lettre presente un sens clair et précis sans quoi les juges ne devraient pas s'y arrêter." 2 Trop. Pres. ch. 4, No. 614.

The principle here laid down has repeatedly been admitted by our courts. In the case of *Lackie* v. *Macmurdo*, 9 An. p. 15, *Slidell*, Ch. J., said: "As the alleged interruption practically affects the rights and obligations of the parties to a contract, it is reasonable to require that the proof of an assent to such change should be clear and unequivocal." See also, *Conway* v. *Williams*, 10 La. 570 ; *Courlebray*, &c., v. *Rils*, 9 Rob. 513.

But, conceding that the letter refers to the same debt as that admitted by the schedule, and that it affords such evidence of an acknowledgment of plaintiff's rights as the law exacts to interrupt prescription, it is submitted that the letter contains an obligation which is made to depend on an uncertain event—a conditional obligation. C. C. 2015; 1 Trop. Pres. No. 74; 2 Trop. Pres. ch. 4, No. 617; *Tyson* v. *McGill*, 15 La. 146; *Lafourcade* v. *Barron*, 8 La. 283; *Tompkins* v. *Brown*, 1 Denio, 249; *Farmers' Bank* v. *Clark*, 4 Leigh. 603; 2 Greenl. Ev., sec. 440.

If the case at bar be tested by the principles recognized in the cases cited, it is clear that the conditional offer of *Dunbar* to pay the plaintiff, "if his health was spared," and by "monthly payments," could not be enforced by a judgment against defendant. For not only has the plaintiff failed to prove that the condition did happen, but the record shows that it did not happen—that *Dunbar* was in bad health from Dec., 1849, up to the time of his death.

SLIDELL C. J. The petition in this case was filed and served in June, 1851. It alleges that the succession of *Dunbar* is indebted to the plaintiff in the sum of $2000, for which a judgment is prayed; and the ground of action is thus stated: "That petitioner advanced the said sum of money to said *Dunbar*, and the said indebtedness was acknowledged by placing the same on his schedule filed in his insolvent proceedings in the late Commercial Court of New Orleans, and by the letter of said *Dunbar*, dated 17th December, 1849, and annexed to the petition, by which he promised to pay petitioner said sum of money so due by him, thereby renewing the obligation and conferring on petitioner a right of action for its recovery."

Among other grounds of defence, the defendant relied on prescription. This ground seems to us untenable, for it appears that at the date of the schedule and of *Dunbar's* letters, *Glenn* resided in Baltimore; his residence is so stated in the petition; there is no evidence that he has ever been in this State. The fair inference from the proof before us, is that he has been absent. It will be observed also that the plea of prescription is general, that is to say, without any specification of terms, and the Article 3508 of the Code, which is invoked in argument by the defendant, declares that "in general all personal actions, except those above enumerated, are prescribed by ten years, if the creditor be present, and by twenty years if he be absent."

As, therefore, a final judgment cannot be rendered for defendant upon the plea of prescription, it remains to consider the other grounds of defence.

We do not think the letter of 17th December, 1849, sustains the allegation of the petition, that *Dunbar* thereby "promised to pay the debt mentioned in the schedule, and thereby renewed the obligation, and conferred on petitioner a right of action for its recovery." It is by no means clear from the language of the letter written in 1849, that the writer refers to the debt mentioned in the schedule in 1840. But were it conceded that the letter refers to the same debt, it does not contain an absolute promise to pay. If the letter can be considered as anything more than a conscientious acknowledgment of the existence of an obligation and the suggestion and the encouragement of a hope that it would eventually be paid, if a promise be its true import, it was nevertheless nothing more than a conditional promise. The writer describes the struggles he had made to pay his debts, the misfortunes he had encountered in his subsequent business, and the large absorption of his salary by family expenses, and then uses this language: "I beg that you will bear with me a little longer, and if my health is spared you will yet receive from me everything. I shall have to make to you monthly payments, and by this means secure you the amount. My expenses this winter have been heavy, from the fact of my poor wife being confined with rheumatism to her bed," &c.

By his cessio bonorum, *Dunbar* was relieved to this extent, that his creditors, parties to the insolvency, could only attack, for the unsatisfied balance of their claims, upon showing that he had acquired property over and above what was necessary for his maintenance and that of his family.   Civil Code, 2173, Act of 1817, p. 138 ;  *Plympton* v. *Preston*, 4 Annual, 359 ;  *Quimper* v. *Biena*, 8 Rob. 204 ;  *Goicochea* v. *Ricarte*, 4 La. 45.    Unquestionably the original obligation is a sufficient consideration for a new promise, and such promise will support an action.  *Beck* v. *Howard*, 3 Ann. 501.   But if the promise be conditional, the condition must be observed.  Here the evidence shows that *Dunbar* was in bad health from December, 1849, up to the time of his death, and it is neither alleged nor proved that his affairs so prospered after the letter as to give him the ability to pay.

Having failed, therefore, to substantiate a right of recovery by virtue of the alleged new promise in 1849, the plaintiff's case rests solely upon the acknowledgment made in the schedule.   But the evidence which proves that acknowledgment, establishes also that there has been a cessio bonorum ; and the grounds for a new attack in such case are neither alleged nor proved.   We will not undertake now to decide a question both novel and difficult, whether upon the death of a debtor who has made a cessio bonorum, his subsequently acquired property is answerable for the unpaid balance of debts antecedent to the cession, even though the property thus left at his decease be insufficient for the maintenance of his widow and children.   Leaving that question open, it is sufficient now to say, that the plaintiff has not alleged nor proved that the insolvent estate has been settled and its assets have proved inadequate.

It is therefore decreed, that the judgment be reversed, and that there be judgment against the plaintiff, as in case of non-suit—the costs in both courts to be paid by the plaintiff.