LOTTINGER, Judge.
This is a suit on a promissory note secured by a collateral mortgage on certain real and personal property.
On October 19, 1959, the defendants, An-sel A. Marbury and Eva R. Marbury executed a promissory note, made payable to the order of Securities Finance Company, Inc., plaintiff herein, endorsed in blank by the defendants, in the amount of $5,292.60 which said note was payable in sixty (60) ■regular monthly installments. The note was secured by a pledge of a collateral mortgage note in the amount of $5,500.00 also dated October 19, 1959, made and executed by the defendants to the order of “Ourselves” and by them endorsed in blank, payable on demand after date, which said collateral mortgage note was paraphed for identification with an act of collateral mortgage of even date with the note on certain real and personal property described in the act of collateral mortgage.
On September 27, 1963, the defendant, Ansel A. Marbury, filed a petition in bankruptcy in the United States District Court for the Eastern District of Louisiana, and as a part of the bankruptcy proceedings,' and particularly, in the scheduling of the debts, listed the debt owed Securities Finance Company, Inc. Notice of the bankruptcy was forwarded to the various creditors of Mr. Marbury, among whom was the plaintiff, who received notice of the *738 bankruptcy petition. On December 31', 1963, the Referee in bankruptcy for the United States District Court for the Eastern District of Louisiana granted to the defendant, Ansel A. Marbury, a discharge of all debts and claims as described therein. On August 12, 1964, the plaintiff, Securities Finance Company, Inc., filed the instant suit against the defendants, praying for judgment against both defendants in the amount of $1,843.62. The plaintiff also prayed for recognition and enforcement of its mortgage against the real and personal property described in the petition. An answer in the form of a general denial was filed by the attorney ad hoc who had been appointed to represent the absent defendant, Eva R. Marbury, and the defendant, Ansel A. Marbury, appeared through his counsel and admitted that the plaintiff was the holder of a promissory note executed by him, but went on to aver that the debt represented by the note had been discharged in a bankruptcy proceeding, admitted that the note was in fact in default and that the note was secured by a mortgage on certain property. In his answer, the defendant went on to state that he had filed a petition in bankruptcy, gave the number thereof, stated that the obligation owed to the plaintiff was listed in the schedule of debts and obligations of the bankruptcy proceeding. The answer then went on to state that because the discharge of the debts listed in the schedule, among which was the claim of the plaintiff, that the defendant, Ansel A. Marbury, was not personally obligated on the indebtedness, nor had he made the plaintiff any unconditional promise or agreement to pay said debt subsequent to the filing of the petition in bankruptcy.
At the time of the trial, the plaintiff adduced testimony which indicated that after September 27, 1963, the day on which the petition in bankruptcy was filed, and up to the time of the filing of this suit, Mr. Mar-bury had paid several sums of money to them, these payments having been made on November 4, 1963, November 26, 1963, April 6, 1964, February 24, 1964, April 27, 1964, March 23, 1964 and June 8, 1964; the payments ranging in amount from $24.00 to $30.00. Therefore, some of the payments were made in the interim between the time of the filing of the petition for bankruptcy and the time that the discharge was granted, and others were made after the granting of the discharge. The Secretary-Treasurer of the plaintiff corporation, Mr. Bo-gan, testified that he had talked with Mr. Marbury many times about payment of his account since September of 1963, with these conversations having taken place primarily over the telephone. His testimony is that he interpreted the statements made by Mr. Marbury on these occasions to indicate a flat unequivocal statement on the part of Mr. Marbury that he would pay the note. This officer’s testimony is that he had his first telephone conversation with Mr. Mar-bury shortly after he received a notice of the filing of Mr. Marbury’s bankruptcy petition and that these telephone conversations continued over the interval which-elapsed between the time of the filing of the-petition in bankruptcy and the filing of the instant suit. Mr. Bogan testified that most, of the payments made by Mr. Marbury subsequent to September 27, 1963, were made-by mail, and that one of these, received by him on November 25, 1963, was accompanied by a letter from Mr. Marbury, the text of which reads as follows:
“I drew $60.00 Sat. which I am sending you $30.00 and the bal. going for other creditors and child support.
I am going to try and send you something each week.
Appreciate your patience.
Sincerely,
s/ A. A. Marbury”
Another of the payments was accompanied by a note which read as follows:
“Please mail Pyt. book showing Bal. to be paid at $24.00 every other week. Thanks
s/ A. Marbury’
*739 The defendant admitted having made the payments testified to by the plaintiff as well as having written the note and the letter filed in the record and testified to by the plaintiff. Mr. Marbury likewise admitted having talked with Mr. Bogan over the telephone on several occasions and stated that he had made these partial payments on the account by reason of the fact that he felt that he had a moral obligation to pay the money. He stated that he had been unable to promise anything definite to Mr. Bogan as to when or how much he would pay on the note and that all of the payments that he had been able to make had been in the form of Money Orders. In response to a direct question under cross-examination, Mr. Marbury stated that he had never specifically promised to pay Securities Finance Company, Inc. the debt after September of 1963, either verbally or in any other fashion.
After the plaintiff had completed his case, the defendant, in connection with the direct examination of Mr. Marbury, offered into evidence a certified copy of Mr. Marbury’s discharge in bankruptcy, to which offering counsel for plaintiff objected on the grounds that a discharge in bankruptcy is an affirmative defense that must be specifically alleged and proven under the provisions of Article 1005 of the Louisiana Code of Civil Procedure. The Trial Judge, after hearing extensive argument by both counsel, overruled plaintiff’s objection and permitted the introduction of the certified ■copy of the discharge.
At the conclusion of the Trial, the Trial Judge, after having given oral reasons, rendered judgment granting to the plaintiff judgment as prayed for against both defendants in rem only, thus denying to the plaintiff the personal judgment prayed for in its petition.
It is from this judgment that the plaintiff perfected this appeal.
Although counsel for plaintiff alleges ■seven separate specifications of error, we believe that they are all variations of three separate and distinct specifications of error. The first, is that the Trial Judge erred in concluding that the defendant sufficiently and properly pleaded the defense of Discharge in bankruptcy upon which he could introduce evidence to that effect. The. second is that the Trial Judge erred in failing to conclude that the defendant made a new promise to pay the existing obligation or acknowledged the existing obligation or acknowledged the existing debt sufficiently to bring it into the realm of his post-bankruptcy estate. The third is that the Trial Judge erred in failing to conclude from the evidence that the defendant had wrongfully disposed of mortgaged property to the detriment of the plaintiff so as to render the debt sued upon non-discharge-able in bankruptcy.
With reference to the first of the specifications of error, that relative to the sufficiency and propriety of the plea of Discharge in bankruptcy by the defendant in his answer, we find that this can best be resolved by an examination of the answer. In Article 2 thereof, the defendant admits that the plaintiff is the holder of the promissory note executed by him, but then says:
“but respondent avers that the debt represented by said note has been discharged in a bankruptcy proceeding as further set forth herein after.”
Later in his answer the defendant states:
“And now further answering said petition, respondent avers, alleges and pleads as follows:
Respondent, Ansel A. Marbury, filed a petition in bankruptcy, being 63-277, in which proceeding the obligation owed plaintiff herein was listed in Schedule A-2, as fully shown by certified copy of Schedules A-l, A-2, A-3 and A-4, of said bankruptcy proceeding.
9.
Because of the discharge of debts listed in the attached schedules, among *740 which is the claim of plaintiff herein, respondent is not personally obligated on this indebtedness, nor has respondent made to plaintiff any unconditional promise or agreement to pay said debt subsequent to the filing of the petition in bankruptcy aforementioned.”
Article 1005 of the Louisiana Code of Civil Procedure, with which we are concerned, reads as follows:
“The answer shall set forth affirmatively arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, division, duress, error or mistake, estoppel, extin-guishment of the obligation in any manner, failure of consideration, fraud, illegality, injury by fellow servant, transaction or compromise, and any other matter constituting an affirmative defense. If a party has mistakenly designated an affirmative defense as an incidental demand, or an incidental demand as an affirmative defense, and if justice so requires, the court, on such terms as it may prescribe, shall treat the pleading as if there had been a proper designation.”
We believe that the Trial Judge, in his oral reasons for judgment correctly disposed of this argument when he said:
“but I think under the interpretation of Article 1005 of the Louisiana Code of Civil Procedure, and particularly the last sentence of that article, ‘that the Court, when justice requires, may on such terms as it may prescribe shall treat the pleadings as if there had been a proper designation’.”
We believe that the entire tenor of the defendant’s answer sets up as a matter of defense the fact that the defendant was granted a Discharge in bankruptcy and that the debt sued upon was one of the debts listed on the schedule of debts from which the defendant was discharged. The answer of the defendant gives the number of the proceeding as well as specifies the particular schedule on which the plaintiff’s debt is listed.
With reference to the third specification of error urged by the defendant, that the Trial Judge erred in failing to conclude from the evidence that the defendant had wrongfully disposed of mortgaged property to the detriment of the plaintiff so as to render the debt sued upon non-discharge-able in bankruptcy, we find that the record reflects that Mr. Marbury and his wife began living separate and apart in June of 1963. Mrs. Marbury retained the dwelling in which the community domicile had been located and in which the furniture which was subject to plaintiff’s mortgage was likewise located. Some time during the year 1964, Mrs. Marbury left these premises, and at the time of the trial was living in the State of New Mexico. Mr. Marbury testified that he did not know what had happened to the furniture which had been in the house, as he had not had it himself and had not seen it since the separation which occurred between him and his wife in June of 1963. There were several items of movable property described in the mortgage to plaintiff which were various types of equipment used in connection with the repair of radio and television sets, a part-time avocation which Mr. Marbury was pursuing in addition to his operation of a grocery store, at the time that he executed the mortgage to the plaintiff. At the time of the trial of this suit, Mr. Marbury testified that with the exception of one piece of equipment which was broken and useless, all of the repair equipment set forth in the mortgage belonged to other persons at the time of the execution of the mortgage and that he had simply borrowed these items from other persons. He then went on to testify that he had no knowledge of the fact that these particular items were included in the mortgage, and that he had gone through his shop with Mr. Bogan and indicated to Mr. Bogan the specific items located therein which belonged to him. He stated that he had not read the mortgage at the time that he executed it and did not *741 realize that these specific items which he did not own, were included therein. His testimony indicates that he returned this borrowed equipment to the person who was the owner and which person he testified was no longer in the city, and that he did not know where the equipment was at the time of the trial. This testimony by Mr. Marbury relative to his having pointed out to Mr. Bogan specific items to be included in the mortgage was uncontradicted by the plaintiff. Mr. Marbury testified that the two motor vehicles which were included in the mortgage were parked in a lot in Baton Rouge, and that they had been there since the time of the filing of his petition in bankruptcy.
The general import of Mr. Marbury’s testimony is that all of the furniture and appliances listed in the mortgage were retained by his wife at the time that they separated prior to the filing of the petition in bankruptcy, and that he had no knowledge of the disposition of these household fixtures, furnishings and appliances; that the two automobiles listed in the mortgage were still in Baton Rouge at a location known to the plaintiff, and that of the items of repair equipment listed in the mortgage only one belonged to him, and that the rest had been included in the mortgage in error, as they in fact belonged to a third person whose name was furnished by Mr. Marbury.
We believe that the burden of showing wrongful disposition of mortgaged property to the detriment of a creditor by a debtor rests on the creditor if he seeks to urge that wrongful disposition as a bar to a plea of Discharge in bankruptcy. We further believe that the plaintiff creditor in this case has failed to carry that burden. While Mr. Marbury’s explanation with reference to portions of the property seem somewhat vague and ambiguous, we cannot from that vagueness and ambiguity draw a conclusion of willful and wrongful disposition of mortgaged property to the prejudice of a creditor.
And now with reference to the second, and we believe most important specification of error urged by the plaintiff, namely that of the Trial Judge’s error in having failed to conclude that the defendant made a new promise to pay the existing obligation or acknowledged the existing debt sufficiently to bring it into the realm of his post-bankruptcy estate, we find that the factual situation as shown by the record necessitates an interpretation of Mr. Marbury’s intentions, particularly as is evidenced by the written communications addressed by him to the plaintiff.
Mr. Bogan stated in his testimony that Marbury had unequivocally agreed, subsequent to the granting of the Discharge in bankruptcy, to pay the entire balance due on the note. Mr. Marbury’s testimony is to the effect that at no time did he definitely, positively agree to liquidate this debt in full, but that he simply felt a moral obligation on the debt and did make payments from time to time to be applied toward the reduction of the indebtedness. Neither Mr. Marbury nor Mr. Bogan were able to quote verbatim the language used by Mr. Marbury in the various telephone conversations which transpired between the parties, and each of them gave his own interpretation of what had been said by Mr. Marbury relative to payment of the debt. We therefore feel that the best evidence of Mr. Mar-bury’s intention is to be found in the written communications from Mr. Marbury to the plaintiff, which communications are filed in the record.
The important language in the letter mailed November 25, 1963, we believe is contained in the second paragraph in which Mr. Marbury said:
“I am going to try and send you something each week.”
This, to us, appears to be considerably less than a definite, specific promise to pay the obligation, but rather seems to indicate that an attempt would be made to pay some indeterminate amount each week.
*742 The other communication contained in the envelope postmarked February 24, 1965, in which the defendant stated:
“Please mail Pyt. book, showing bal. to be paid at $24.00 every other week”
is certainly not a promise to pay of any character, but is simply a request that a payment book be forwarded. Mr. Marbury explained the writing of this note in his testimony that Mr. Bogan had called him on the telephone and said that if it would make it easier for him, he would arrange for Mr. Marbury to make the payments in the amount of $24.00, and to make them payable every other week. Mr. Marbury said that he then wrote Mr. Bogan the above quoted note so that he could “see how he had it fixed up”. This testimony by Mr. Marbury in connection with the writing of this note was uncontradicted by the plaintiff’s witness.
A very similar situation was presented to the appellate courts of this state in the case of Irwin v. Hunnewell, 207 La. 422, 21 So.2d 485, wherein the bankrupt had written several letters to his creditor concerning the obligation which was discharged in the bankruptcy proceeding. In that case, the Supreme Court set up the following as a criterion for determining whether a discharged debt had been novated by a new promise to pay. In that case they said the following:
“* * * For it is well settled and is conceded that a promise to pay a debt from which the debtor has been discharged in a bankruptcy proceeding, to be effective, must be direct and definite. A mere acknowledgment of such a debt, with an expression of intention to pay it at some indefinite time, is not an enforceable obligation. Bach v. Cohn, 3 La.Ann. 101; Beck v. Howard, 3 La.Ann. 501; Linton v. Stanton, 4 La.Ann. 401; Bartlett v. Peck, 5 La. Ann. 669; Glenn v. Dunbar’s Adm’x, 10 La.Ann. 253; Collier on Bankruptcy, 13th Ed., Vol. 1, § 17, p. 643; Gilbert’s Collier on Bankruptcy, 4th Ed., § 17, p. 385; 8 C.J.S., Bankruptcy, § 583, p. 1571; 6 Am.Jur., Bankruptcy, § 532, p. 832; Allen & Co. v. Ferguson, 18 Wall. 1, 85 U.S. 1, 21 L.Ed. 854.”
“ * * * To the same effect was the decision in Beck v. Howard, 3 La.Ann. 501. And from Linton v. Stanton, 4 La.Ann. 401, we quote:
“ ‘It has been often held that a new promise to pay a debt discharged by certificate, must be express, distinct, and unequivocal. The intention of the bankrupt to bind himself must be clear.’ ”
“ * * * In 8 C.J.S., Bankruptcy, § 583, p. 1571, the rule is stated thus:
‘In order to revive a liability on a debt discharged in bankruptcy or to create a new enforceable obligation, there must be an express promise to pay the specific debt, made to the creditor or his agent, and while no particular form of language is necessary, to constitute such a new promise there must be a clear, distinct, and unequivocal recognition and renewal of the debt as a binding obligation, anything short thereof being insufficient, as, for example, the mere acknowledgment of the discharged debt, or the expression of hope, desire, expectation, or intention to pay or revive the same.’ ”
The criterion set forth in Irwin v. Hunne-well by the Supreme Court has not been changed or altered in any manner, either by that Court or by the Legislature. We further believe the criterion established therein to be accurate and eminently correct.
After a careful reading in consideration of the two written communications contained in the record, we are of the opinion that neither of these communications contained a clear, distinct and unequivocal promise to pay the debt as is required by the law in order to constitute a novation or renewal of the debt.
For the above and foregoing reasons, the judgment appealed from is affirmed; all costs to be paid by appellant. Judgment affirmed.