### ALLEN & CO. v. FERGUSON.

A debtor by original obligation, in one of the Southern States, writing to his creditor, after he, the debtor, had applied for the benefit of the Bankrupt Act, and while the proceedings were pending, a discharge in which was finally granted to the debtor, gave, in the letter, a statement of his affairs and of the causes which led to his applying for the benefit of the Bankrupt Act. He continued:

> "Be satisfied; all will be right. I intend to pay all my just debts, if money can be made out of hired labor. Security debt I cannot pay."

Adding in a postscript:

> "All will be right betwixt me and my just creditors."

*Held*, that the debt having been discharged by the discharge of the debtor under the Bankrupt Act, was not revived by what was written as above; that the promise to pay it was not clear, distinct, and unequivocal; short of which sort of promise none would revive a debt once discharged.

ERROR to the Circuit Court for the Eastern District of Arkansas.

P. H. Allen & Co. sued A. H. Ferguson upon a promissory note, dated March 20th, 1867, payable one day after date, with interest.

Ferguson appeared and pleaded his discharge in bankruptcy in bar to the action.

The plaintiffs replied a new promise in writing made while the proceedings in bankruptcy were pending. This promise the plaintiffs averred that they relied upon, and in consequence of it made no efforts to collect their debt. The

alleged promise was contained in the following letter, which the plaintiffs made part of their replication, viz. :

"CROCKETT'S BLUFF, ARKANSAS, January 7th, 1868. .
"MESSRS. T. H. ALLEN & Co.

"DEAR SIR: I avail myself of this opportunity to give you a fare statement of my pecuniary affa'res.  First, I failed to make a crop; secondly, find myself involved as security to the amount of five or eight thousand dollars; was sued, and judgments was render'd against me at the last turm of our co'rt for about $4000, a sum suf'ic'ent to sell all the avai'ble property that I am in possession of.  I lost about $3000 by persons taking the bankrupt law.  This is my situation.  I was, as you can re'dily conclude, in a bad fix.  To remain as I was, at that time, my property would be sold to pay security debts, and my just creditors would not get any part of it, and that I would be redused to insolvency and still ju'gments against me.  As a last resort concluded to render a skedule myself in order to forse a *prorater* division of my *affects*.  The five bales cotton I ship*t* you was all my crop, to pay you for the meat that you had sent me, to enable me to make the little crop that I did make.  The cash that I requested you to send me was, for myself and William Ferguson, to pay his hands for labor; and one hundred and fifty yards of the bag'ing was for W. Ferguson, and one barel of the salt.  I have been absent from home for the last two weeks; got home last night, and has not sean him yet, but suppose he has ship*t* you some cotton.  If he has not done so, I will see that he sends you cotton at once.  *Be satisf'ed ; all will be right   I intend to pay all my just debts, if money can be made out of hired labor.  Security debt I cannot pay.*  I shall have a hard time, I suppose, this se'son, but will do the best I can.

"JAN. 8.—Since the above was writ'en I have seen William Ferguson.  He says he ship'ed you two bales cotton, ten or twelve days ago, and ship'ed in my name, as the baggin' was order'd by me for him.  William Ferguson will be in Memphis betwixt this and the first of March, and will call and see you on bisness matters betwixt me and you'self.  *All will be right betwixt me and my just creditors.*  Don't think hard of me.  Attribet my poverty to the unprincipel'd Yankey. . Let me heare from you as use*l*.

"Yours, very respectfully,

"A. H. FERGUSON."

To this replication the defendant demurred. The demurrer was sustained by the Circuit Court, and this appeal was taken by the plaintiffs.

*Mr. A. H. Garland, for the plaintiff in error; Messrs. Clark and Williams, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The question is, does the letter of the defendant, set forth in the replication, contain a sufficient promise to pay the debt in suit?

All the authorities agree in this, that the promise by which a discharged debt is revived must be clear, distinct, and unequivocal. It may be an absolute or a conditional promise, but in either case it must be unequivocal, and the occurrence of the condition must be averred if the promise be conditional. The rule is different in regard to the defence of the statute of limitations against a debt barred by the lapse of time. In that case, acts or declarations recognizing the present existence of the debt have often been held to take a case out of the statute. Not so in the class of cases we are considering. Nothing is sufficient to revive a discharged debt unless the jury are authorized by it to say that there is the expression by the debtor of a clear intention to bind himself to the payment of the debt. Thus, partial payments do not operate as a new promise to pay the residue of the debt. The payment of interest will not revive the liability to pay the principal, nor is the expression of an intention to pay the debt sufficient. The question must be left to the jury with instructions that a promise must be found by them before the debtor is bound.*

The plaintiffs in error contend that such promise is to be found in the letter of the defendant, forming a part of their replication. They rely chiefly on these expressions: "Be satisfied; all will be right. I intend to pay all my just debts, if money can be made from hired labor. Security

---

* Hilliard on Bankruptcy, 264 to 266, where the cases are collected.

debt I cannot pay," and on the postscript where he adds, "All will be right betwixt me and my just creditors."

There can be no more uncertain rule of action than that which is furnished by an intention to do right. How or by whom is the right to be ascertained? What is right in a particular case? Archbishop Whately says: "That which is conformable to the supreme will is absolutely right, and is called right simply, without reference to a special end. The opposite to right is wrong." This announces a standard of right, but it gives no practical aid. What may be right between the defendant and his creditors is as difficult to determine as if he had no such standard. It is not absolutely certain that it is right for a creditor, seizing his debtor, to say, Pay me what thou owest, or that it is wrong for the debtor to resist such an attack. It is not unnatural that the creditor should think that payment of the debt was right, and that it was the only right in the case. It is equally natural that the debtor should entertain a different opinion. The law holds it to be right that a debtor shall devote his entire property to the payment of his debts, and when he has done this that after-acquired property shall be his own, to be held free from the obligation of all his debts, just debts as well as unjust, principal debts as well as security debts. Neither the supreme will, so far as we can ascertain it, nor the laws of the land, require that a debtor whose family is in need, or who is himself exhausted by a protracted struggle with poverty and misfortune, should prefer a creditor to his family; that he should appropriate his earnings to the payment of a debt from which the judgment of the law has released him, rather than to the support of his family or to his own comfort. What an honest man should or would do under such circumstances it is not always easy to say. When, therefore, the debtor in this case said to the plaintiff: "Be satisfied; I intend to do right; all will be right betwixt my just creditors and myself," he cannot be understood as saying that he would certainly pay his debt, much less that he would pay it immediately, as the plaintiff assumes. What is or what may be right depends upon

many circumstances.    The principle is impracticable as a rule of action to be administered by the courts.    There is no standard known to us by which we are able to say that it is wrong in the defendant not to pay the plaintiff's debt.

We are of the opinion that the letter produced does not contain evidence of a promise to pay the debt in suit, and that the judgment appealed from must be

AFFIRMED.