MERRIMAC, The (FORBES v.). See Case No. 4,927.

MERRIMAC HAT CO. (SANFORD v.). See Case No. 12,313.

MERRIMACK MANUF'G CO. (UNITED STATES & FOREIGN SALAMANDER FELTING CO. v.). See Case No. 16,789.

---

## Case No. 9,479.

### In re MERRIMAN.

[18 N. B. R. 411; 44 Conn. 587; 26 Pittsb. Leg. J. 120.] [1]

District Court, D. Connecticut. Feb., 1878.

BANKRUPTCY — EFFECT OF FORMER DISCHARGE — NEW PROMISE TO PAY—NEW CREDITORS —MARSHALING ASSETS.

1. A discharge by virtue of compliance with the terms of a composition in bankruptcy is a discharge by operation of law, even as against an assenting creditor, and an indebtedness thus discharged is a sufficient consideration for a new and express promise to pay the original debt.

2. Where a debtor who had been discharged under composition proceedings in bankruptcy, gave to one of his creditors who had signed the resolution a new note for his old debt, and afterwards again went into bankruptcy, held, that the claim so revived should not be postponed to those of the new creditors.

3. Under section 4972, the district court has power only to marshal assets according to priorities and rights which have been created or established by the act itself, or have been created by liens placed upon the assets by the act of one of the parties, or by operation of law, and has no power to discriminate between different classes of debts of the same legal character.

Appeal from a register in bankruptcy.

Application of the assignee of the estate of Matthew M. Merriman, bankrupt, to have the proof of a claim by the American National Bank expunged.

J. Hooker and A. D. Smith, for assignee.
H. C. Robinson and C. E. Gross, for bank.

SHIPMAN, District Judge. Matthew M. Merriman had been duly adjudicated a bankrupt by decree of this court, prior to August 17th, 1875, and his estate was then in settle-

---

[1] [Reprinted from 18 N. B. R. 411, by permission. 26 Pittsb. Leg. J. 120, contains only a partial report.]

ment. On that day, upon his application, an order was passed directing a meeting of his creditors to be held on August 30th, 1875, to ascertain if they would resolve to accept a composition to be proposed by him in satisfaction of their respective debts. At said meeting he presented a proposition to pay, in full satisfaction and discharge of their respective claims, twenty-five per centum thereof, which payment was to be secured by his four equal promissory notes, indorsed by Joseph Merriman, to be dated on the day of the final confirmation of the resolution by the court, and payable in three, six, nine, and twelve months from the date thereof, with interest. The American National Bank had duly proved against the estate of said bankrupt his notes to the amount of four thousand four hundred dollars, indorsed by Joseph Merriman. Said resolution was passed at said meeting by the requisite majority in number and value of the creditors assembled at such meeting, and was confirmed by the signatures thereto of the debtor and of the requisite creditors in number and value. The American National Bank, by their duly constituted attorney, expressly accepted said proposition at the first meeting of creditors, and expressed said acceptance by their signature. At the second meeting of creditors, held on September 11th, 1875, the resolution was found by the court to be for the best interest of all concerned, and was ordered to be recorded. On November 27th, 1875, M. M. Merriman gave said bank his three notes, amounting in all to four thousand four hundred dollars, indorsed by Joseph Merriman, in renewal of the pre-existing notes which were due to said bank, paid the discount due thereon, and continued to renew said notes, making from time to time partial payments on the renewals, and paying the discounts thereon, until December 8th, 1876, when there was due upon the last renewals three thousand one hundred and eighty-five dollars, which sum with interest thereon is still unpaid. Joseph Merriman has continued to be the indorser upon each set of renewals. The bank received in one year after September 11th, 1875, either in reduction of the notes, or by way of interest, more than the amount which was payable by M. M. Merriman by the terms of the composition, but did not receive the same as a payment on the composition. No notes in accordance with the resolution were ever given to or demanded by said bank, but the giving of said notes was waived by the bank. Joseph Merriman's indorsement made the original notes and the renewals secure. It was not claimed by the assignee that said bank assented to or signed said resolution under any promise or expectation that the debt of four thousand four hundred dollars was to be paid by the bankrupt. Fraud on the part of either party to the composition was not claimed. M. M. Merriman was again adjudicated a bankrupt by decree of this court on February 16th, 1877, and John Hooker, Esq.,

was subsequently appointed assignee of his estate. Said bank has proved against said estate the last renewal notes, amounting to three thousand one hundred and eighty-five dollars. The assignee objects to the allowance of this claim upon the ground that the notes are without consideration, and that the debt which they represent has been legally discharged.

All the questions of law which arise upon the foregoing facts were discussed by counsel, the principal question being, whether an express promise made by a bankrupt to a creditor to pay the amount of his debt is valid, such creditor having theretofore expressly assented to a composition made and confirmed under the 17th section of the amended bankrupt act of June 22, 1874 [18 Stat. 182], and such composition having been substantially carried into effect, and exact compliance with its terms having been waived by the creditor. An express promise by a debtor to pay a debt which had been, previously to such promise, barred by some positive statute, or had been discharged by operation of law, is binding upon the promisor. Cook v. Bradley, 7 Conn. 57; Stafford v. Bacon, 1 Hill, 532. In such cases the moral obligation to make payment, although the debt has been legally discharged, is a sufficient consideration for a new and express promise. In order to revive a debt which had been discharged by bankruptcy or insolvency proceedings, the new promise must be clear, distinct and unequivocal. Allen v. Ferguson, 18 Wall. [85 U. S.] 1. A promise to pay a debt which has been voluntarily discharged by the creditor, as by accord and satisfaction, is not legally binding. Performance of an agreement of composition inter partes, in accordance with the terms of the agreement, or legal tender of performance of such agreement in accordance with its terms, is a discharge of the debt which has been agreed to be compromised, so that the discharged debt cannot legally be revived. An agreement of composition inter partes becomes an executed agreement by full payment on the composition, though not in accordance with the terms of the agreement, provided compliance with the terms is waived by the creditor.

I forbear to consider the question whether the payment within the year to the bank of an amount of money equal to the twenty-five per cent. and interest, which was payable by the resolution, is a satisfaction of the agreement, the money not having been paid to or received by the bank upon the composition, but upon the antecedent debt, and shall assume that, before the last renewal notes were given, the debtor had been legally discharged by his compliance with the terms of the resolution, legal compliance having been waived by the creditor.

The question which was first suggested resolves itself into this: Is a discharge, by performance of the terms of a bankruptcy composition, a discharge by operation of law, or

is it a voluntary discharge from the debt which was due to a creditor who had expressly assented to the resolution of composition? The resolution to accept a composition, and the proceedings which result in an assent by the requisite number of creditors, and in the recording of the resolution by order of court, are proceedings in bankruptcy. They are a method of dividing the estate of the bankrupt among his creditors under the control of a court of bankruptcy. Payment under a composition is one mode of distribution; payment of dividends by an assignee is another mode. Theoretically, each mode divides the whole estate. A discharge by virtue of payment of the amount specified in the resolution of composition is confessedly a compulsory discharge as to the non-assenting creditor. The discharge is in a certain sense a voluntary act of an assenting creditor, because it is in his power to give or withhold his assent. Assent is a matter of his own election, and if the requisite number of creditors do not assent, the resolution has no effect. But the discharge is also by operation of law as to the assenting creditor, because the entire proceeding is a part of bankruptcy proceedings instituted under authority of a court, and this particular method of division of the bankrupt assets has no validity unless the court is satisfied that the proposition is for the interest of the creditors. The assent of the creditors is a means of ascertaining the fairness and propriety of the proposed division. The proceeding is not a composition inter partes, in which proceeding each creditor can make his assent or dissent final as to himself, but is a statutory composition wherein the assent only of a specified number is required, subject to a subsequent decree of court. The composition is as to the assenting creditor both a voluntary act and an act of the law, but its efficiency is derived from the compulsory power of the law. The differences are radical between the nature of a composition inter partes and of a bankruptcy composition. The root of their differences is the fact that the entire proceedings for and in a bankruptcy composition are proceedings in bankruptcy, and are a part of a system for the compulsory division of assets which is administered by a court, while a composition inter partes derives its validity merely from the will of the parties. These differences induced the supreme court of Massachusetts to declare recently that the proceedings for a composition under the statute "differ wholly in nature and effect from a voluntary composition which binds only those executing it." Guild v. Butler, Oct., 1877 [122 Mass. 498]. That a discharge by virtue of compliance with the terms of a bankruptcy composition is a discharge by operation of law, is indicated by the effect of such a discharge upon sureties or indorsers of the debtor under the corresponding section of the English act of bankruptcy.

Proceedings under the 126th section of the

English bankruptcy act of 1869 are substantially similar in character to proceedings under the section of our bankrupt act in regard to composition. A discharge of the principal debtor by virtue of an executed agreement inter partes is a discharge of his surety, unless such result is expressly avoided by the terms of the agreement of composition, but a discharge of the principal debtor by virtue of a composition under the 126th section of the English act is, after some hesitancy on the part of courts, and after a contrary decision, now clearly held not to be a discharge of the surety, although the creditor had expressly assented to the terms of the resolution. Ex parte Jacobs, 10 Ch. App. 211, overruling Wilson v. Lloyd, L. R. 16 Eq. 60. In the case of Megrath v. Gray, L. R. 9 C. P. 216, the same result was reached. The court of common pleas placed their decision upon the ground that it is a universal rule in bankruptcy law that the discharge of an insolvent debtor does not discharge his solvent co-debtor, and that this principle has always been recognized in English bankruptcy acts since the declaratory act in 10 Anne, and was again expressly incorporated in section 50 of the act of 1869, and that the discharge mentioned in section 50 applies also to a discharge which may be obtained as a result of the proceedings under section 126. In Ex parte Jacobs the court took a somewhat broader view of the subject. It stated the question as follows: "There can be no doubt that, if the holder of a bill, by becoming party to a deed or agreement, independently of the bankrupt act, agrees to accept a composition from the acceptor, he thereby discharges the drawer; but, on the other hand, it is equally clear that if the acceptor is discharged from his liability by operation of law by becoming a bankrupt, the liability of the drawer to the holder is not thereby affected. We have now to consider whether the discharge of the acceptor under the 125th and 126th sections of the bankruptcy acts of 1869, where the holder of the bill votes in favor of the liquidation or composition, is to be considered a discharge by the voluntary act of the holder, or a discharge by operation of law." The reasons which influenced the court were, first, that in a composition inter partes the discharge is the act of the creditor alone, whereas in a bankruptcy composition the proper majority have power to assent to the terms, whether the particular creditor chooses to attend or not, or chooses to vote or not; and, secondly, the injurious results of the doctrine that an assenting creditor was discharging his surety. "The consequences of holding that the holder could not vote without discharging the drawer would be, that in many cases a great number, and in some cases the majority, could not vote."

I have been pressed towards a conclusion that the discharge should be deemed to be the voluntary act of the assenting creditor by the fear that the contrary doctrine would open a door to fraud, and that a bankrupt would be enabled to obtain easily the requisite majority of his creditors, and then, disregarding forthwith the terms of the resolution, would give notes to the favored few, and thus revive his debts to the disadvantage of subsequent creditors, while he is also guilty of a breach of faith towards the unfavored majority. But a consideration of the character and nature of bankruptcy composition leads to the conclusion that while this improper course of conduct is possible and practicable, it is one which is permitted by the present terms of the bankrupt act.

The assignee also claimed that the case showed that M. M. Merriman's estate was deeply insolvent, which was not denied, and that the bulk of the debts were incurred after the first bankruptcy for goods which went into the new business, that the bankrupt obtained credit upon the faith of his discharge by virtue of his composition and in the belief that his old debts were cancelled, and that the goods which were then sold form the bulk of the assets of the estate. From these facts the assignee insists that an equity has arisen that payment of a dividend upon the revived debts should be postponed until the new debts have been fully paid.

If the conclusions which have heretofore been indicated are correct, each class of debts is alike legally due, and no express lien in favor of any one class of creditors has attached to the fund in the hands of the assignee. Section 4972 declares that "the jurisdiction conferred upon the district courts as courts of bankruptcy shall extend: * * * Fourth. To the adjustment of the various priorities and conflicting interests of all parties. Fifth. To the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties and due distribution of the assets among all the creditors." I am of the opinion that these clauses confer upon the district court power only to marshal assets according to priorities and rights which have been created or established by the act itself, or have been created by liens which have been placed upon the assets by the act of one of the parties or by operation of law, and that it is not in the power of the court to discriminate between different classes of debts of the same legal character, although as matter of morals or of honor one class of debts should not have been incurred. The application to expunge the claim of the bank is denied.