HOLLIS McDOUGALL and JOHN McDOUGALL v. J. C. PAGE
GEORGE YOUNG v. J. C. PAGE and
B. L. D. CARPENTER.

*Bankruptcy. Discharge when does not affect a Foreign Creditor.
Debt discharged, how revived.*

1. A clear, distinct, and unequivocal promise to pay is essential to a revival of a debt
   barred by a discharge in bankruptcy.
2. A debt contracted and payable in Canada by a person resident in this State to a
   person resident in Canada is not barred by a discharge under the U. S. bank-
   rupt act, when the foreign creditor neither proved his debt in bankruptcy,
   though provable under the act, nor in any way was a party to the proceedings
   nor had personal notice thereof.

ASSUMPSIT. Heard on a referee's report, February Term,
1879, Orleans County, REDFIELD, J., presiding. Plea, discharge
in bankruptcy. Replication, a foreign contract, a foreign creditor,
and a new promise. Judgment *pro forma* for the defendant.
The referee found the following facts:

The debt was contracted in Canada, October 19th, 1874. At
that time and since the plaintiffs were residents in Canada, and
carried on business there; at the same time the defendant was a
resident in Vermont. On the 24th day of December, 1874, the
defendant filed in the U. S. District Court for the District of Ver-
mont his petition to be adjudged a bankrupt, and was so ad-
judged; and such proceedings were had that on the 7th day of
March, 1876, he received from that court his discharge discharg-
ing him from all debts which existed and were provable against
him under the bankrupt act, on the 24th day of December, 1874.
This debt was not proved against the defendant in the bankruptcy
proceedings; the plaintiffs had no personal notice, and in no way
were they parties to the said proceedings. The other facts are
stated in the opinion.

*Edwards & Dickerman*, for the defendant.

Proceedings in bankruptcy are in no just sense *ex parte* in their character; for notice is required to be given to the creditors, either personally or by publication. U. S. R. S. s. 5019; *Lathrop* v. *Stuart*, 5 McLean, 167; Bump (9 Ed.), 395. After legal notice has been given, creditors must be treated as having notice of the proceedings. *Smith* v. *Breinkerhoof*, 6 N. Y. 305; 8 Barb. 519; 7 How. 643. When a discharge is pleaded the court will presume that legal notice was given, and that the creditors were parties to the bankruptcy proceedings. *Lathrop* v. *Stuart*, 5 McLean, 167; Bump, 735. A discharge cannot be impeached by any omission unaccompanied by fraud. *Payne* v. *Abel*, 4 B. R. 67; *Burnside* v. *Brigham*, 8 'Met. 75. Foreign creditors are notified in the same way that domestic creditors are. *In re Julius Haye*, Supplement to Bankruptcy Report, 1 Vol. p. 21. Had the contract been made here, though the creditor was domiciled in Canada, the discharge would be a bar. Story Conf. of Laws, ss. 340, 342; *Peck* v. *Hibbard*, 26 Vt. 698. A discharge bars a foreign as well as a domestic creditor. There is no need of an express declaration of the legislature that foreign creditors are included. Bump, 746; *Murray* v. *Rotterham*, 6 Johns. Ch. 52; *Pattison* v. *Wilber*, 12 B. R. 193, (same case 10 R. I. 448); Story Conf. of Laws, ss. 334, 349; *Penniman* v. *Meigs*, 9 Johns. Ch. 325; *Blanchard* v. *Russell*, 13 Mass. 6; 4 Johns. Ch. 460; 7 Johns. Ch. 313. The plaintiff by suing in our courts submits himself to the *lex fori*, and cannot deny *here* the legal effect of the discharge under our law. 9 Johns. Ch. 325; 6 Johns. Ch. 52; 4 Law Reporter, 480; 10 Mass. 340: *Smith* v. *Buchanan*, 1 East, 6; *Quin* v. *O'Keef*, 2. H. Black. 553; *Agnew* v. *Platt*, 15 Pick. 420; *Brigham* v. *Henderson*, 1 Cush. 433; *Ogden* v. *Saunders*, 12 Wheat. 213; *Sawyer* v. *Marsh*, 10 Met. 594. ‘The *lex fori* must govern. WASHINGTON, J., in *Ogden* v. *Saunders, supra*, 261, 263; JOHNSON, J., in same case; *DeLaRose* v. *Priest*, 11 E. C. L. 578. A discharge valid where granted has the same effect in another country. Lord MANSFIELD in *Baldwin* v. *Goulding*, Cook Bankruptcy Laws, 487; *Hunter* v. *Potts*, 4 Term, 108 (183); *Edwards* v. *Ronald*,

1 Knapp, 259. The goods of a bankrupt *all over the world* are vested in the assignee. POLLOCK, B., in *Armani* v. *Castrique*, Law Jour. 1845, vol. 14, part 2, p. 38. Justice requires that the operation of the discharge be as extensive as that of the assignment.

*John Young*, for the plaintiffs, cited as to the question of revival of the debt by a promise to pay, *Hill* v. *Kendall*, 25 Vt. 528 ; *Barlow* v. *Bellamy*, 7 Vt. 54 ; *Evans* v. *Corey*, 29 Ala. 99 ; *Dearing* v. *Moffit*, 6 Ala. 776. The debt contracted and payable in Canada was not discharged. Insolvent laws of one State cannot discharge contracts of citizens of other States, because they have no extra-territorial operation, and consequently the tribunal sitting under them, unless in cases where citizens of such other States voluntarily become a party to the proceedings, has no jurisdiction in the case. Legal notice cannot be given, and consequently there can be no legal default. *Sturgis* v. *Crowninshield*, 4 Wheat. 122 ; *M'Millan* v. *M'Neill*, 4 Wheat. 209 ; *Baldwin* v. *Hale*, 1 Wall. 223. A bankrupt law does not discharge foreign contracts *without the positive mention of such contracts*. *Suydam* v. *Broadnax*, 14 Pet. 75 ; *Reinsdyk* v. *Kane*, 1 Gal. 371. See also *Sawyer* v. *Marsh*, 10 Met. 594 ; *Clark* v. *Hatch*, 7 Cush. 455 ; *Fessenden* v. *Willey*, 2 Allen, 67 ; *Dinsmore* v. *Bradley*, 5 Gray, 487. Notice is essential, and notice cannot be given to the foreign creditor for want of jurisdiction. *Hawley* v. *Hunt*, 27 Iowa, 303 ; *Pratt* v. *Chase*, 44 N. Y. 597 ; *Soule* v. *Chase*, 39 N. Y. 342 ; *McMenomy* v. *Murray*, 5 Johns. Ch. 435. The validity, extension, performance and release of contracts are determined by the law of the place of the contract. *Harrison* v. *Edwards*, 12 Vt. 648 ; *Peck* v. *Hibbard*, 26 Vt. 698 ; *May* v. *Breed*, 7 Cush. 15 ; *Lang* v. *Hammond*, 40 Me. 204 ; *Potter* v. *Brown*, 5 East, 124 ; Story Conf. of Laws, ss. 340, 343. It is equally well settled that the discharge of a contract by the laws of a place where it was not made or to be performed will not be a discharge in any other country. Douglas Rpt. 110 ; 2 Kent, 418 ; *M'Millan* v. *M'Neill*, 4 Wheat. 209 ; *Lizardi* v. *Cohen*, 3 Gill, 430 ; *McMenomy* v. *Murray*, 3 Johns. Ch. 435. The doctrine of

*Ogden* v. *Saunders*, 12 Wheat. 213, is that a discharge under the bankrupt laws of one country does not affect contracts made or to be executed in another. 2 Kent, 517 ; *Greenwood* v. *Curtis*, 6 Mass. 358, 378 ; *McIntyre* v. *Parks*, 3 Met. 207.

The opinion of the court was delivered by

ROWELL, J. These cases were heard together. They are alike in legal substance, except that in the McDougall case there is a question of a new promise, which we dispose of *in limine* by saying that no clear, distinct, and unequivocal promise is found, which is essential to the revival of a debt that is barred by a discharge in bankruptcy. *Allen & Co.* v. *Ferguson*, 18 Wall. 1. Indeed no promise whatever to pay is found, but only an attempt to compromise shown.

The main question is this : Does a discharge under the United States Bankrupt Act operate in the courts of this State to bar the enforcement of a debt provable under said act, but contracted and payable in Canada by a person resident in this State to a person resident in Canada, who neither proved his debt in bankruptcy, nor in any way became a party to the proceedings, nor had any personal notice thereof ? This is an important question, and has been twice argued before the full Bench, and has received our careful consideration.

Section 5119, U. S. Rev. Sts., provides, that " a discharge in bankruptcy duly granted shall . . . release the bankrupt from all debts, claims, liabilities, and demands which were or might have been proved against his estate in bankruptcy." Section 5019 provides for giving notice of the institution of proceedings to all creditors upon the schedule filed with the debtor's petition, or whose names may be given to the register in addition by the debtor. Upon application for a discharge, notice is to be given to all creditors who have proved their debts. Sec. 5109.

Some things connected with this subject may be regarded as settled. And in the first place, there is no doubt that a debt or liability arising in any country may be discharged by the laws of that country ; and that such a discharge, if it releases the debt or liability, and does not merely interfere with the remedy, or course

of procedure to enforce it, will be an effectual answer to the claim, not only in the courts of that country, but in every other country. This is the law of England, and is a principle of private international law adopted in other countries. *Peck* v. *Hibbard*, 26 Vt. 698 ; Story Conf. Laws, ss. 335, 338 ; BOVILL, C. J., in *Ellis* v. *M'Henry*, L. R. 6 C. P. 228.

Secondly, as a general proposition, it is also true that a discharge under a foreign bankrupt law is no bar to an action in the courts of another country on a contract made and to be performed there. *M'Millan* v. *M'Neill*, 4 Wheat. 209 ; *Smith* v. *Buchanan*, 1 East, 6 ; *Ellis* v. *M'Henry*, L. R. 6 C. P. 228. This is because of want of jurisdiction in the court granting the discharge, so that the debt or liability is not thereby released.

But it is contended on the part of the defendants, that a discharge under the bankrupt law of any country is a bar in the courts of that country to all debts and liabilities provable under the law, wherever contracted or to be performed ; that by resorting for the enforcement of his debt to the courts of the country granting the discharge, the creditor waives his extra-territorial immunity, subjects himself to the *lex fori*, and cannot deny the effectiveness of the discharge against him. And this seems to be the doctrine in England, though we think that none of the cases to which we have been referred go to the full extent of holding it, as none of them appear to be cases in which the liability was contracted or to be performed in countries in no wise subject to British rule. For it is important to be remembered in this connection, that for the purposes of the Imperial Bankrupt Act, the British Dominions form one country or law-district,—Dicey's Law of Domicil, 355 *et seq.;* and that, in case of the Legislature of the United Kingdom making laws that will be binding upon her colonies and dependencies, a discharge in the colonies or in the mother country may by the Imperial Legislature be made a binding discharge in both, whether the debt or liability arose in one or the other, and that a discharge created by an act of the English Parliament would be clearly binding on the English courts, and that they would be bound to give effect thereto. *Ellis* v. *M'Henry*, L. R. 6 C. P. 228.

*Armani* v. *Castrique*, as reported in 13 M. & W. 443, was a mere question of pleading, and the effect of an English certificate in an English court as against a foreign creditor was not involved, though some discussion on that subject incidentally arose between the court and counsel during the argument, when POLLOCK, C. B., said that an English certificate was a discharge as against all the world in the English courts. And he put it on the ground that the goods of the bankrupt all over the world were vested in the assignee, and that it would be manifest injustice to take the property of the bankrupt in a foreign country, and then allow a foreign creditor to come and sue him in England. *Edwards* v. *Roanld*, 1 Knapp, 259, came up on appeal from the Supreme Court of Calcutta. It was an action of general assumpsit. Plea, discharge in bankruptcy in England. Replication, that the cause of action accrued in Calcutta, where the appellees were domiciled, and that they had no notice of the proceedings in bankruptcy. *Held*, that the certificate was a good bar. But Calcutta, as shown by the case, was " a place governed by and subject to the Laws of England." *The Royal Bank of Scotland* v. *Cuthbert*, 1 Rose, 462, was an action in the Court of Sessions in Scotland, and holds that an English certificate is a bar in the Scotch courts to a debt contracted in Scotland. And in *Sidaway* v. *Hay*, 3 B. & C. 12, it was held that a debt contracted in England by a trader residing in Scotland was barred by a discharge under a sequestration in Scotland issued in conformity to the 54 Geo. 3, in the same manner as debts contracted in Scotland. These cases simply give effect to Imperial legislation. *Odwin* v. *Forbes*, 1 Buck, 57, was a suit instituted in the Dutch Colonial Court of Demerara, for the recovery of the balance of an account for sugars consigned to and received by the defendant and his partner in London, and the defendant pleaded his discharge in bankruptcy in England. The Colonial Court held the certificate a discharge of the debt, putting the case mainly, if not wholly, on the grounds of comity and reciprocity which were shown to exist between England and Holland, and that the effect of the certificate ought, in justice, to be co-extensive with the assignment, and that, if foreign courts allowed the assignees under an English commission to strip the

debtor of his foreign property by giving effect to the assignment in their jurisdiction, they were bound in justice to give equal effect to the certificate, and not leave the debtor liable to actions by foreign creditors. From this judgment the plaintiffs appealed to the King in Council, and the case came on to be heard on appeal at the Cock Pit, on Saturday, 31st May, 1817, when judgment was affirmed; but on what ground does not appear, as no opinion of the English court is given. Demerara is a part of British Guiana, the government of which is vested in a governor appointed by the British Crown, and a Court of Policy, originally instituted by the Dutch in 1773 for Demerara, 11 Enc. Brit. 251 ; and whether this case is to be regarded as merely giving effect to Imperial legislation or not, it does not seem to be much authority for the doctrine that an English certificate in an English court is a bar to a debt wherever contracted, but involved rather the question of whether the Colonial Court would give effect to an English certificate. We have examined some English cases to which we have not been referred, and among them is *Ellis* v. *M'Henry*, L. R. 6 P. C. 228, in which it was held that a discharge from a debt or liability under a bankrupt act of the Imperial Parliament, is a discharge from such debt or liability in the courts of any country forming part of the British Dominions.

But, without further consideration of the English cases, we think it may be said that the defendant's contention is in accordance with the English rule. Recognitions of that rule are found scattered through the English reports and text books. Dicey's Law of Domicile, Rule II. 355. But it seems to rest largely on the ground put by POLLOCK, C. B., in *Armani* v. *Castrique*, namely, the universal effect there given to an assignment in bankruptcy. For it is the settled law of England that an assignment under the bankrupt law of a foreign country passes all the personal property of the bankrupt situate, and all debts owing, in England, and that the attachment of such property by an English creditor, after bankruptcy, with or without notice to him, is invalid to overreach the assignment. And the same doctrine holds there under English assignments as to personal property and

13

debts of the bankrupt in foreign countries. And, upon principle, it is said that all attachments made by foreign creditors in foreign countries, after such assignments, ought to be held invalid; and that, at all events, a British creditor will not be permitted to hold the property acquired by a judgment under any attachment made in a foreign country after such assignment. Story Conf. Laws, s. 409. The same doctrine obtains in France and Holland. Story Conf. Laws, s. 417. But the ubiquity of the operation of assignments under foreign bankrupt laws has always been denied in this country, and such assignments are not permitted to prevail against a subsequent attachment of the bankrupt's effects found here. Our courts will not subject citizens to the inconvenience of seeking their dividends abroad when they have the means of satisfying their demands at home. *Booth* v. *Clark*, 17 How. 322, and cases *passim*. The law of Germany is the same. Whart. Conf. Laws, s. 844.

The wording of our Bankrupt Act is certainly broad enough to cover foreign debts, for the bankrupt is to be released from *all debts which were or might have been proved against his estate.* But is the act to be construed as intended to include foreign contracts, they not being particularly mentioned therein? Not if we adopt the rule laid down in *Suydam* v. *Broadnax*, 14 Pet. 67, in these words: " And it may be laid down as a safe proposition, that a statute discharging contracts or denying suits upon them, without the particular mention of foreign contracts, does not include them." " *Ratio est, quia statutum intelligit semper disponere de contractibus factis intra et non extra territorium suum.*" In *M'Menomy* v. *Murray*, 3 Johns. Ch. 435, Chancellor KENT adopts the same rule, and says: " A bankrupt or an insolvent act ought not to be presumed to have been intended to reach foreign contracts *unless it be so declared.*" But in *Murray* v. *DeRottenham*, 6 Johns. Ch. 52, which was concerning the same subject-matter as *M'Menomy* v. *Murray*, he held this language: " But I do not apprehend that we are to require an express declaration of the legislature that foreign creditors are included in the operation of a bankrupt law, when the language of the statute is otherwise sufficiently general and compre-

hensive, and when the evident policy of the law is to embrace all debts that can be proved under the commission, and to give the unfortunate merchant who conducts himself fairly new credit in the commercial world and new capacity for business." But in *Reimsdyk* v. *Kane*, 1 Gal. 371, Judge STORY adopted and applied the rule in *Suydam* v. *Broadnax*. We think this the true rule to be adopted in construing this class of statutes, rather than to impute to the Legislature an intention to include matters beyond its jurisdiction.

In *Penniman* v. *Meigs*, 9 Johns. 325, a discharge under the insolvent law of New York was held to bar a suit on a promissory note given in Connecticut to the plaintiff resident in Rhode Island, who did not assent to the proceedings nor receive any dividend from the defendant's estate. The case was put on the ground that the statute was peremptory and binding on their courts, and that they were bound thereby to treat the discharge as a bar to all suits brought there on antecedent contracts wherever made. It will be seen hereafter that this case is opposed to the whole current of American decision, State and Federal; and in *Hicks* v. *Hotchkiss*, 7 Johns. Ch. 312, Chancellor KENT refers to it as overruled by *M'Millan* v. *M'Neill*, 4 Wheat. 209. Going upon the ground of *Penniman* v. *Meigs*, and referring to it as a well-considered case and "much in point," it was held in *Murray* v. *DeRottenham*, that a discharge under the United States Bankrupt Act of 1800 was a bar to a debt provable under said act, though contracted and payable in Germany. But the authority of this case is very much shaken by the overruling of the case on which it is based; and we think it runs counter to the great current of American cases.

In this connection we refer to *M'Menomy* v. *Murray*, and remark that that case is reconcilable with *Murray* v. *DeRottenham*, only on the ground that in the former the Chancellor was speaking of an *absolute* discharge, effective everywhere, as distinguished from a mere denial of remedy to foreign creditors in the courts of the country granting the discharge.

In *Pattison* v. *Wilbur*, 10 R. I. 448, effect was given to an American certificate against foreign creditors, on the authority of *Pen-*

*niman* v. *Meigs*, *Murray* v. *DeRottenham*, and In re *Zarega*, 4 Law Reporter, 480 (A. D. 1842), which last case we have not seen.

But this court has held in *Bedell & Wardner* v. *Scruton*, 54 Vt. 493, that a discharge under our insolvent law is no bar to a suit brought here for the enforcement of a debt contracted in this State by a person resident here to a person resident in New Hampshire, who did not prove his debt in insolvency, nor in any way become a party to the proceedings. And this is now the well-settled doctrine, even though the contract by its terms is to be performed in the State where the discharge is granted. *Baldwin* v. *Hale*, 1 Wall. 223 ; *Kelly* v. *Drury*, 9 Allen, 27.

But it is said that these cases, and especially the cases in the Supreme Court of the United States, go upon constitutional rather than jurisdictional grounds. And this is true to some extent. But some of them do not discuss, and none of them exclude, the non-jurisdictional ground, while many of them go solely upon that ground. Thus, in *Baldwin* v. *Hale*, " Insolvent laws of one State cannot discharge the contracts of citizens of other States, because they have no extra-territorial operation, and consequently the tribunal sitting under them, unless in cases where a citizen of such other State voluntarily becomes a party to the proceedings, has no jurisdiction in the case. Legal notice cannot be given, and consequently there can be no legal default." In *Bedell & Wardner* v. *Scruton* this court said that it was a question of citizenship, and that State courts and State laws are powerless to affect the rights of non-resident creditors by any jurisdiction they may have or exercise over the person of the debtor or by any proceedings *in rem* affecting the debt. In *Hawley* v. *Hunt*, 27 Iowa, 303, Judge DILLON says : " A creditor cannot be compelled by a State of which he is not a citizen or resident to become a party to insolvency proceedings therein. Such proceedings are judicial in their nature, so that jurisdiction over the person of the creditor is essential. Notice is requisite to jurisdiction in such cases, and can no more be given in insolvency proceedings than in personal actions when the party to be notified resides out of the State ; and hence a discharge under a State insolvent law will not and can-

not discharge a debt due to a citizen of another State, unless the latter appears and voluntarily submits to the jurisdiction of the court by becoming a party to the proceedings or claiming a dividend thereunder." In *Pratt* v. *Chase*, 44 N. Y. 597, it is said that " as to creditors of the insolvent who are not citizens of the same State where the discharge is granted, the want of binding force to defeat the obligation of a contract is founded upon want of jurisdiction over such creditors."

The question of waiver of extra-territorial immunity by suing in the courts of this State, although not expressly ruled in *Bedell & Wardner* v. *Scruton*, was directly involved in it, and that decision amounts to an absolute denial of any such waiver. But that question was expressly ruled in *Soule* v. *Chase*, 39 N. Y. 342, in these words: " The plaintiff in the case before us being a non-resident when the debt was incurred and when the insolvent proceedings were commenced, was not divested of his extra-territorial immunity by resorting to a court of this State, and the discharge is not available against him." HUNT, C. J., however, dissented, and said all there is to be said on the other side. In *Kelley* v. *Drury*, 9 Allen, 27, it is said: " This court has not been disposed to make any discrimination in favor of our citizens in proceedings against them in the State courts in distinction from proceeding in the courts of the United States." In a very recent case in Maine, *Hills* v. *Carlton*, 15 Reporter, 398, this point is ruled thus: " This debt not being discharged, the plaintiffs have an equal right to enforce the payment of their debt with other citizens having claims to enforce. The courts in the cases cited like the present have held that a discharge shall not be a bar. An absolute discharge of a debt and a prohibition against all remedies for its enforcement, would seem to differ little in their consequences to the creditor. The discharge affords no defence to the plaintiff's claim."

But it is said that while this may be true as to discharges granted under State insolvent laws, it is not true as to discharges granted under the National Bankrupt Act. But wherein lies the distinction in principle ? But it is said that under the National Bankrupt Act all creditors, foreign as well as domestic, are to be

notified.   But of what avail is notice to foreign creditors ?   They
are beyond the jurisdiction, and out of reach of process.   Are
their debts to be invalidated by the judgment of a court that has
neither jurisdiction of them nor of their debts ?   If so, upon what
principle?   Judge STORY, in *Reimsdyk* v. *Kane*, 1 Gal. 371,
says : " The general rule is, that a discharge of a contract ac-
according to the *lex loci contractus* is good everywhere.   The
rule is founded upon public convenience and the comity of nations.
It would seem to follow from the same principle that a discharge
under the municipal laws of a foreign state should not affect the
validity of such a contract."   And he goes on to say :. " I cannot
but presume that the judicial tribunals of Rhode Island, in all
cases where a different rule were not prescribed by their own leg-
islature, would adopt the *jus gentium* as to the construction and
validity of foreign contracts sought to be enforced by their pro-
cess.   If, therefore, the words of the act of insolvency do not
necessarily extend, as I think they do not, to foreign contracts,
I can entertain no doubt that they would adjudge them according
to that equity which the usage of nations had settled and applied.
I hold it to be a legitimate inference from doctrines already es-
tablished, that a contract made in a foreign country, and to be
governed and discharged by its laws, cannot be discharged by a
mere regulation of another country to which the parties have not
bound themselves to submit.   .   .   .   A discharge under an in-
solvent act goes *au fonds* to the merits and not *a l' ordre judiciare*
to the process or remedy."

The distinction as to the forum in which the party elects to in-
stitute his action, may be very material in regard to all that is
mere remedy.   But when the question goes to the merits, the *lex
loci* should govern, unless the *lex fori* expressly forbids it.   The
rule is thus stated in the very recent case of *Pritchard* v. *Norton*,
106 U. S. 124: " The principle is, that whatever relates to the
remedy and constitutes part of the procedure, is determined by
the law of the forum, for matters of process must be uniform in
the courts of the same country ; but whatever goes to the sub-
stance of the obligation and affects the rights of the parties as
growing out of the contract itself or inhering in it or attaching to

it, is governed by the law of the contract." There is no express prohibition in the law of this State nor of the United States forbidding the *lex loci* to govern, and we fail to see on what principle these cases should be excepted from the general rule. We think the principle of the case in the 54th Vt., and other similar cases, is decisive of the cases before us in favor of the plaintiffs; that that principle is as applicable to a discharge in bankruptcy as to a discharge in insolvency. And this was the opinion of the late Chief Justice REDFIELD, as shown in his note to *Baldwin* v. *Hale*, 3 Am. Law Reg. N. S. 470, wherein he says : " The contrast between State insolvent laws and a general bankrupt law of the United States consists chiefly in this, that one is confined to the particular State, and the other operates throughout the nation. And one residing without the State, having a claim against the debtor who has obtained his discharge under the insolvent laws of a State, stands in the same relation to the discharge that a foreign resident does to a discharge obtained under a general bankrupt law." We regard this as sound doctrine, and fully in accord with fundamental principles of the law, from which no departure should be made. Though this precise question does not appear to have been ruled by the Supreme Court of the United States, we think it safe to say that no decision of that court gives countenance to a contrary doctrine.

Judge WHEELER has favored us with the statement of a case that came before Judge BLATCHFORD in the early part of 1878, which involved the question of jurisdiction over foreign creditors. A firm in New York was composed of residents of New York and a resident of Canada. The Canadian member was indebted to other residents of Canada, and the firm was indebted to residents of New York. The Canadian creditors came into New York and attached the property of the Canadian member of the firm there. Proceedings in bankruptcy were instituted against the firm in season to avoid the attachment, provided there could be an adjudication of bankruptcy, and such proceedings would reach the property of the individual partners as well as of the firm. U. S. Rev. Sts. s. 5121. The Canadian creditors appeared and objected to an adjudication of bankruptcy of the firm, or of

any more than the resident members of it, on the ground that there was no jurisdiction of the Canadian member. The resident creditors insisted that the court had jurisdiction of the firm as such, and of these Canadian creditors, because they had come into the jurisdiction and appeared as parties to the proceedings. To this latter claim it was replied that they did not appear to participate in the proceedings nor the avails thereof, but only to object to having the property involved on which they had claims. Judge BLATCHFORD held that the court had no jurisdiction of the Canadian partner nor of the Canadian creditors, either on account of their coming into the jurisdiction to attach the property of that partner, or of their appearing as parties to the proceedings for the purpose of objecting to an adjudication that would involve the property they had attached, and the adjudication was limited accordingly.

In the cases at bar, the court granting the discharge in bankruptcy had jurisdiction neither of the plaintiffs nor of their debts. The obligatory force of said debts, therefore, is in nowise impaired by said discharge in the country where they were contracted and payable. There is no express, and we think no implied, enactment, State or National, forbidding the courts of this State to afford the plaintiffs a remedy for the enforcement of their debts here. A discharge under bankrupt or insolvent laws, unlike the bar of statutes of limitations, goes to the merits and not to the process or remedy. The *jus gentium privatum* is, that contracts valid in the place where they are made and to be performed are to be held valid everywhere, by the tacit or implied assent of the parties (*Pritchard* v. *Norton*), a rule founded not only in the convenience but the necessities of nations. On what principle, then, shall we refuse these plaintiffs a remedy in our courts?

Judgments reversed, and judgments on the reports for the plaintiffs.

ROYCE, C. J., and REDFIELD, J., dissented.