16049

CROSS v. STACKHOUSE *ET AL.*

(46 S. E. (2d) 668)

*Messrs. Samuel Want, James S. Verner* and *Sam Rogol,* all of Darlington, for Appellants,

102

*Messrs. Norton, Norton & Norton* and *C. W. Derrick,* all of Marion, for Respondent,

February 27, 1948.

G. Duncan Bellinger, Acting AJ.: The agreed statement contained in transcript of record clearly sets forth all that is necessary for the proper understanding of the questions raised in this appeal. That statement, which is adopted, is as follows:

This action was begun by the service of a summons and complaint dated December 13th, 1946.

The complaint embraces two causes of action. The first of these causes of action embraces a note in the original principal amount of $8,104.86, made by the late Will Stackhouse to the respondent, and upon which various payments are alleged by the respondent to have been made by the original debtor within the period beginning October 18th, 1933, and ending October 26th, 1942. The second cause of action is founded upon another note made by the same maker, payable to the same payee, in the original principal sum of $1,000.00.

At the trial of the cause the respondent took a voluntary nonsuit as to the second cause of action for the admitted reason that the statute of limitations had run against the second cause of action.

The appellants are the executors of the will of the late Will Stackhouse, and by way of answer, after denying certain of the material allegations of the complaint, they set up the defenses (1) that the indebtedness evidenced by the note in question had been discharged in bankruptcy proceedings, and (2) that the maintenance of the action is barred by limitations. At the trial of the cause there was offered in

evidence by appellants a transcript of a voluntary bankruptcy proceeding filed by Will Stackhouse in April, 1935. From this transcript and from other testimony in the cause it appears that the indebtedness of the testator evidenced by the note involved herein was scheduled in the bankruptcy proceedings; that in said proceedings Will Stackhouse was duly adjudged a bankrupt; that the said bankrupt made an offer of composition to his creditors to pay them 15 per cent. of the amount of their claims; that this offer was accepted by a majority of the creditors and approved by the Court in the manner required by the bankruptcy statute and that payment of the 15 per cent. was made to the creditors of the bankrupt, including the respondent herein.

In due course an order was made in the said proceedings adjudging compliance with the composition offer and confirming the same.

The respondent introduced evidence to prove that after the order confirming W. Stackhouse's composition in bankruptcy was made, and after the amount due respondent under the composition was paid, there was a new promise on the part of W. Stackhouse to pay the debt alleged to have been due respondent by W. Stackhouse. Respondent also introduced evidence of payments alleged to have been made by W. Stackhouse as late as October 26, 1942, to apply on the indebtedness.

The cause came up for hearing before the Court and a jury at the April, 1947, term of the Court of Common Pleas of Marion County. At the close of the respondent's testimony the appellants moved for an order of nonsuit. This order being refused, the appellants then moved for a direction of verdict. This motion was overruled. Thereupon the respondent moved for a direction of verdict in his favor. This motion was granted. A motion for a new trial made by the appellants having been refused, judgment on the verdict in the amount of $10,914.57, consisting of principal, interest

and attorney's fees, was thereupon entered in favor of the respondent.

While the Exceptions made by the appellants raise other issues, in our opinion it is necessary only to pass upon the question of whether or not, under the undisputed evidence before the lower Court, error was committed by that Court in directing a verdict for the respondent and refusing the motion for a directed verdict made by the appellants.

It is admitted that the appellants' testate executed to the respondent two promissory notes. The note, which is the subject of this action, together with the other note, as shown by the evidence, had been discharged in a proceeding in bankruptcy had by the appellants' testate.

It is the settled law in this State that when a debt has been discharged in bankruptcy it cannot be revived except by showing by the evidence (1) a distinct, positive, and unequivocal new promise by the debtor to pay the debt so discharged; *Lanier v. Tolleson*, 20 S. C. 57; *Pyles v. Bell,* 20 S. C. 365; *Allen & Co. v. Ferguson,* 18 Wall. 1, 21 L. Ed. 854; *Park v. Brooks,* 38 S. C. 300, 17 S. E. 22, 24; and (2) if the debtor is indebted to the creditor on more than one obligation, it must be shown that the new promise to pay specified the debt or particularly referred to the debt intended to be revived or created by the new promise to pay.

It is so well settled in this state that it is not necessary to cite supporting authorities, that where one attempts to recover on a debt once barred by the statute of limitations, in addition to having to prove the new promise to pay the debt, there must be shown the particular debt to which the promise to pay relates.

Whether the action be one on a debt barred by a discharge in bankruptcy, or one barred by the statute of limitations, the one seeking to recover must

show the new promise to pay. There is this difference, however, between the two actions. Partial payments upon the debt discharged in bankruptcy will not alone imply a promise to pay that debt; nor will a mere acknowledgement of the debt revive it. In an action on a debt barred by the statute of limitations, under the terms of that statute, it is provided that a written acknowledgement of the debt once so barred shall be evidence of the new or continuing contract and that partial payment upon the debt shall be "equivalent to a promise in writing" to pay that debt. Code 1942, § 368. It should be here noted that in reviving a debt once barred by a discharge in bankruptcy, that new promise to pay does not have to be in writing, but it may be revived by a verbal promise to pay, so long as that promise is made in distinct, positive, and unequivocal terms.

The case of *Park v. Brooks, supra,* clearly sets forth and distinguishes what is necessary to be shown to recover upon a debt sued upon, where that debt has been discharged in bankruptcy, and what must be shown where the debt sued upon has been barred by the statute of limitations. Therein, it is said: "The cases of *Pyles v. Bell,* 20 S. C. 365, and *Allen v. Ferguson,* 18 Wall. 1 [21 L. Ed. 854], to which may be added the case of *Lanier v. Tolleson,* 20 S. C. 57, relate to actions on a promise to pay a debt after a discharge in bankruptcy, and therefore do not apply. There, to sustain an action, the new promise must be distinct, positive, and unequivocal, not implied from a partial payment, or a mere acknowledgment of indebtedness; but such is not now, and never was, the rule in relation to promises to take a case out of the operation of the statute of limitations. There the rule formerly was that, while a mere acknowledgement of a subsisting indebtedness was sufficient to imply a promise to pay the same if such acknowledgement was made before the statutory period had run out, but after such period had expired there must be either an express promise to pay, or such unqualified and unequivocal admission that the debt is still

due, unaccompanied by any expression indicative of an intention not to pay, as would imply a promise to pay."

In 6 Am. Jur., under the title "Bankruptcy", at Section 532, we find that the majority holding in all jurisdictions to be as follows: "Unless otherwise provided by statute an enforceable promise to pay a discharged debt may be made orally. The promise must, however, be either express or directly implied in the terms used; it cannot be implied simply from conduct recognizing the debt, for example, from a payment on account of either principal or interest. No particular form of words need be used provided the promise is clear, distinct, and unequivocal, and is constituted of words which in their natural import identify the debt, and express a present intention on the part of the bankrupt to bind himself to its payment. A simple acknowledgement of the justness of a debt and of its present existence as a debt formerly contracted and now unpaid, or the expression of a hope, desire, expectation, or intention to pay, is not sufficient. * * *"

Upon the trial of this cause below it appeared, and it is undisputed, that on February 9, 1931, Will Stackhouse executed and delivered to the respondent herein his promissory note, which is the subject of the controversy; that he had theretofore, on January 1, 1931, executed to the respondent another promissory note; that Will Stackhouse, the appellants' testate, became financially embarrassed and was duly adjudged a bankrupt in April, 1935; that the two obligations executed by Will Stackhouse to the respondent were scheduled in the bankruptcy proceeding; that appellants' testate made an offer of composition to his creditors to pay them 15 per cent. of the amount of their claims; that this offer was accepted by his creditors and approved, as required by the bankruptcy statute, and payments thereunder made to the creditors of the bankrupt, including the respondent herein.

An order was made in the bankruptcy proceeding adjudging compliance with the composition offered and confirming the same, and thereafter the bankrupt was discharged.

After the discharge of the bankrupt there were partial payments made on the note, the subject of this action, commencing October 18, 1933 and ending October 26, 1942. On November 22, 1939, as shown by the evidence, the respondent herein was ill and the appellants' testate wrote Mrs. Cross as follows:

"I know your expenses are heavy at this time and I want you to know that I am thinking of you and I therefore enclose my check for $200.00.

"I do not expect this money to be returned, I want it to go as a credit on my transaction with Mr. Cross and it is my purpose to make additional remittances as my finances will permit.

"I trust Mr. Cross will continue to improve and can soon return home."

In his communication to respondent on May 11, 1944, appellants' testate said:

"I found your favor of the 4th inst on my return home on Monday. I regret that I am unable to comply with your request because of heavy expense I have had to bear in the past, what I am having now and expect to have in the immediate future.

"As you probably know, all of my property is encumbered by mortgage which I am endeavoring to pay off; in order to reduce this debt, I am having to practice economy in every way. I am making every effort to get this mortgage out of the way and this leaves me with very little money to apply to anything else.

"In addition I have had, am having and expect to have heavy expense for some time to come. As you know Billy Anderson is physically incapable of earning a livelihood by

manual labor. Esther and I are going to considerable expense to give him an education that will qualify him for such work as he can perform and make a success of his life.

"I deeply regret that I cannot meet your demands either by raising cash for you or by supplying you with security which you would approve. In the meantime I shall be glad to help you with such small amounts as I can spare from time to time."

The letter of May 11, 1944, was written by appellants' testate to the respondent herein in response to a request made by the respondent to pay an obligation owing by the appellants' testate to the respodent, or to secure the same.

It is upon these letters that respondent's case must stand or fall. If these letters show a distinct, positive and unequivocal promise by appellants' testate to pay the note sued upon, and if, coupled therewith, the note sued upon is specifically identified or referred to in the letters, then the Court below was correct in directing a verdict for the respondent. On the contrary, if these letters did not contain a distinct, positive and unequivocal promise to pay the note sued upon, and if the note sued upon is not specifically identified, or referred to, in the letters, then the lower Court was in error in directing a verdict for the respondent and should have directed a verdict for the appellants.

From an analysis of this correspondence, it will be seen there was an entire absence of any promise to pay the note sued upon. Likewise, there is no identification in the correspondence of the note in question. At the most, all that can be said of these letters is that they express a mere hope or desire to pay off some unidentified "transaction" had between the respondent and appellants' testate.

Upon the whole case there has been a complete failure of the respondent to prove those things necessary to recover on a note once barred in bankruptcy. It, therefore, follows

that there being an entire lack of evidence, as shown on the whole case, to sustain the respondent's action, the lower Court erred in directing a verdict for the respondent and committed further error in not granting appellants' motion for a directed verdict.

Judgment reversed and case remanded to the Circuit Court for entry of judgment in favor of defendants.

FISHBURNE, STUKES, TAYLOR and OXNER, JJ., concur.